UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON RICHARD ROSE,

                Petitioner,

v.

NOAH NAGY,

                Respondent.

_____/

Case No. 1:19-cv-135

Hon. Robert J. Jonker

## REPORT AND RECOMMENDATION

Jason Richard Rose (sometimes referred to as "Rose" or "petitioner") has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254. The threshold issue in this case is whether Rose properly filed a motion for relief from judgment before August 25, 2015. If Rose properly filed a motion by that date, then the one-year statute of limitations for filing a habeas petition was tolled and his petition was timely. If Rose did not properly file a motion for relief from judgment before that date, then the statute of limitations was not tolled and his habeas petition was untimely. For the reasons discussed below, I conclude that the motion for relief from judgment was not properly filed before August 25, 2015, and recommend that the petition be denied because it is barred by the one-year statute of limitations.

### I.      Background

### A.      Trial, conviction and sentence

This case involves arson. A jury convicted Jason Rose of burning a dwelling house, contrary to M.C.L. § 750.72, and burning personal property with a value of $1,000 or more, but less than $20,000, contrary to M.C.L. § 750.74(1)(c)(i). *People v. Rose*, No. 297769, 2013 WL

1

3239679 at *1 (Mich. App. June 27, 2013).  The trial court sentenced Rose as a habitual offender, M.C.L. § 769.13, to serve 17 to 40 years in prison for burning the dwelling house conviction and to serve 5 to 10 years in prison for burning personal property.  *Id*.

### B.    State court appeal

Rose, through appellate counsel, raised nine claims on appeal:

I.    Did the trial court err in allowing Fire Marshal Brian Batten to testify as to his conversation with Linda Travis on the morning of trial under the notion the conversation was non-hearsay and permitted as statements of identity?

II.    Did the admission of the statements made by Ms. Travis to Fire Marshal Batten violate the Confrontation Clause?

III.    Were the defendant's Fifth Amendment rights against self-incrimination violated when the People repeatedly referred to his silence during opening statements, during their case in chief, during cross-examination of the defendant, and at the closing argument?

IV.    Did the court deny the defendant his right to present a defense when it prohibited him from calling witnesses in his defense at trial?

V.    Did the defendant's trial counsel provide ineffective assistance to the defendant during his trial?

VI.    Did the prosecutor's conduct at trial rise to the level of prosecutorial misconduct?

VII.    Was the jury's verdict against the great weight of the evidence?

VIII.    Did the combination of errors combine to a level of prejudicial error necessary for reversible error?

IX.    Did the Trial Court err in attributing points for OV 10 and OV 14 at defendant's sentencing?

Appellate Brief (ECF No. 9-18, PageID.2125-2126).

Rose also filed a *pro se* brief raising five issues[1]:

X.    Did the prosecutor's conduct at trial rise to the level of prosecutorial misconduct?

---

[1] For purposes of this report, the Court will refer to Rose's *pro se* issues as X through XIV.

XI.    Did the trial court err in allowing Officer Batten to testify as to the conversation with Linda Travis on the morning of trial under the guise that the conversation was [sic] admissible statements of identity?

XII.    Did the trial court err in ruling against defendant's motion for directed verdict?

XIII.   Did the defendant's trial counsel provide ineffective assistance to the defendant before and during trial?

XIV.   Did the combination of errors combine to a level of prejudicial error necessary for reversible error?

Pro se (Standard 4) Brief (ECF No. 9-19, PageID.2808).

The Michigan Court of Appeals remanded the case for an evidentiary hearing to resolve a conflict in the evidence as to whether Rose "gave his trial lawyer timely and adequate information with which to investigate each of the proposed witnesses and with which to file a witness list." *Rose*, 2013 WL 3239679 at *3.  The Court of Appeals explained the results of that hearing:

> The trial court conducted the evidentiary hearing over two days and entered its findings of fact and conclusions of law in February 2013. It found that Rose's trial lawyer's testimony was "consistent, forthright, and believable" and "should be afforded great weight." In contrast, the court found Rose and his witnesses' testimony to be either incredible or of little evidentiary worth; indeed, the trial court characterized Rose and some of his witnesses as liars.

> The trial court also dismissed Rose's documentary evidence. The trial court specifically found that Rose fabricated his witness list: "On the last day of the evidentiary hearing, February 1, 2013, he produced a handwritten witness list which he claimed he had provided to his counsel on January 6, 2010 but was never presented to this Court or the prosecutor until February 1, 2013 – it was not produced earlier because it was fabricated by him to bolster his testimony."  The trial court similarly rejected Rose's copy of an e-mail attachment that he purportedly sent to his trial lawyer on February 6, 2010; the court found that the original e-mail either had "no attachment or it was purposefully unreadable" and that the copy produced at the hearing was "fabricated for (or at best, first produced in a readable fashion at) this hearing."

After remarking generally on the testimony and evidence, the trial court made the specific findings requested by this Court. The trial court found that Rose's trial lawyer had repeatedly asked Rose to provide her with the names of potential witnesses beginning on January 6, 2010, which was before the deadline for submitting a witness list. Despite these repeated requests and despite the fact that he clearly had contact information for several of his witnesses-namely, his friend, Jeremy Burr, Burr's wife, and his own ex-wife, Rebekka Kristick-Rose did not provide his lawyer "with any information by which to list any witnesses" prior to the deadline for the submission of a witness list. The court further found that, even after the deadline passed, Rose still did not provide his trial lawyer with timely information on any potential witness. It was not until the trial itself that Rose provided his trial lawyer with any useable information.

On the basis of these findings, the trial court determined that Rose's trial lawyer could not be faulted for failing to file a witness list before the January 15, 2010 deadline or failing to investigate the witnesses that Rose identified on appeal. Therefore, it concluded that Rose failed to show that his trial lawyer's conduct fell below and objective standard of reasonableness under prevailing professional norms.

*Id*. 2013 WL 3239679 at \*3-4.  In the end, the Michigan Court of Appeals affirmed Rose's

conviction and sentence on June 27, 2013.  *Rose*, 2013 WL 3239679.[2]

Rose filed a *pro se* application for leave to appeal to the Michigan Supreme Court.

Rose set out eight issues:

I.    Whether the Court of Appeal's [sic] ruling that the prosecutor did not engage in misconduct is clearly erroneous.

II.   Whether the Court of Appeals committed err [sic] in ruling that the Prosecutor did not violate Roses [sic] rights to remain silent by eliciting testimony that Rose did not speak with investigators and using that testimony as evidence substantive to imply that Rose had a guilty conscience.

---

[2] The Court notes that Rose, through counsel, filed a separate appeal on May 3, 2010 in *People v. Rose*, No. 297811 (Mich. App.) (ECF No. 9-21, PageID.2917).  The Michigan Court of Appeals summarily dismissed the appeal:

"The claim of appeal is DISMISSED for lack of subject matter jurisdiction because it was not filed within 42 days of the judgment of sentence entered on March 19, 2010 as required by MCR 7.204(A)(2)(c).  As a result, appellant may only challenge the judgment of sentence by filing a delayed application for leave to appeal under MCR 7.205(F)."

Rose, No. 297811 (Order) (May 11, 2010) (PageID.2916).

4

III.    Whether the Court of Appeals contrary to Supreme Court precedents held that that Trial Court did not err when it overruled Roses [sic] Trial Lawyers Hearsay Objection to Batton's [sic] Testimony.

IV.    Whether the Court of Appeals committed err [sic] in ruling that Rose's right to confront Travis was not violated.

V.    Whether the Court of Appeals was clearly erroneous in ruling that Rose's Trial Counsel was effective in exercise of a trial strategy choice to present the defense of an identification defect as opposed to one of an Alibi following a full investigation.

VI.    Whether the Court of Appeals ruling that Rose was provided effective assistance of Counsel is clearly erroneous.

VII.    Whether the Court of Appeals ruling that the trial court did not abuse its discretion when it denied Rose's request for the late endorsement of witnesses is clearly erroneous.

VIII.    Whether the Court of Appeal's [sic] ruling that there was not cumulative error requiring reversal is clearly erroneous.

*People v. Rose*, No. 147803 (Mich.) (ECF No. 9-20, PageID.2854-2855).

The Michigan Supreme Court denied Rose's application:

On order of the Court, the application for leave to appeal the June 27, 2013 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court. The motion for miscellaneous relief is DENIED.

*Id.* (Order, January 31, 2014) (ECF No. 9-20, PageID.2845).  The court also denied his motion for

reconsideration:

On order of the Court, the motion for reconsideration of this Court's January 31, 2014 order is considered, and it is DENIED, because it does not appear that the order was entered erroneously.

*Id.* (Order) (May 27, 2014) (PageID.2846).

###    C.    Rose's motion for relief from judgment

After his unsuccessful appeal, Rose sought post-judgment relief in the trial court.

*See* Proceedings (ECF No. 9-16, PageID.1628-1996).  The record reflects that in August 2015,

Rose attempted to file a motion for relief from judgment.  However, Rose did not file a proper motion for relief from judgment until December 14, 2015, because his motion filed in August 2015 was rejected by the Court in an order entered on August 27, 2015.

A question arose as to when Rose mailed the motion for relief from judgment to the Oakland County Circuit Court.  Arguably, the date Rose mailed the motion could be relevant under the "prison mailbox rule." *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (under the federal prison mailbox rule, a prisoner's notice of appeal was "filed" at the time he "delivered it to the prison authorities for forwarding to the court clerk").  However, this line of argument is irrelevant. First, the prison mailbox rule does not apply to filings in Michigan state courts.[3]  Second, even if such a rule applied, his act of mailing did not "file" a motion for relief from judgment, because the motion was defective and returned to Rose before filing.

Clearly, the state trial court had possession of Rose's un-filed motion for relief from judgment before August 27, 2015, the date that the court denied the motion for filing an oversized brief and refused to accept the improper motion for filing.  In this regard, an undated, unsigned

---

[3]  As this Court explained in *Riddle v. Mackie*, No. 1:15-cv-623, 2015 WL 4879018 at *1 (W.D. Mich. Aug. 10, 2015):

[T]he prison mailbox rule does not apply to prisoner filings in state court. The prison mailbox rule has its origins in federal law and does apply to state prisoners filing documents in federal court. *See Houston v. Lack*, 487 U.S. 266, 270-71, 108 S.Ct. 2379, 101 L.Ed.2d 245. (1988). However, the Michigan Court of Appeals expressly declined to adopt the holding in *Houston v. Lack*, finding that the state statute and the Michigan Court Rules require "filings" to be made with the clerk, and not with prison officials. *Walker–Bey v. Dep't of Corrs.*, 222 Mich.App. 605, 564 N.W.2d 171, 171, 173 (Mich.Ct.App.1997) (per curiam). This Court looks to Michigan law to determine when documents submitted to state courts, like Riddle's 6.500 motion, were "filed." *See Artuz v. Bennett*, 531 U.S. 4, 8, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000). Because the clerk of the Kalamazoo Circuit Court received Riddle's 6.500 motion on December 5, one day after the one-year federal limitations period expired, the 6.500 motion did not toll the limitations period for the purpose of Riddle's § 2254 action. Federal courts in Michigan have enforced the one-year limitation period in similar situations. *E.g., Wyatt v. Hofbauer*, No. 07-cv-12896, 2008 WL 3834086, at *3 and n. 5 (E.D. Mich. Aug.13, 2008) (involving a state prisoner's motion for relief that was filed in state court one day after the one-year federal limitation period expired and holding that the motion in state court did not toll the limitation period for the state prisoner's habeas petition).

letter contains a statement that Rose mailed the motion for relief from judgment on August 19, 2015 – not on August 5, 2015, as suggested by the date on the motion.  This letter states:

> To whom it may concern:
>
> This enclosed "page 27" is an attachment to the 6.500 Motion filed on behalf of Jason Rose. This should replace the current page 27 on the original and 2 copies filed with this Court on August 20th, 2015.  If you have any questions, please contact Amanda Schultz [phone number omitted].  Thank you.

PageID.1628.  Notably, this letter was filed in the Oakland County Circuit Court on August 24, 2015.  PageID.1628.  Because Rose's motion for relief from judgment was rejected and not accepted for filing, this letter is evidence that the Court received Rose's improper motion for relief from judgment sometime before August 25, 2015. In addition, as discussed, *infra*, Rose represented to the state court that he mailed it on August 19, 2015.

Assuming that the state trial court had possession of the proposed motion for relief from judgment sometime before August 25, 2015, the record includes Rose's "Motion to file brief exceeding 50 pages."  PageID.1633-1635.  This motion is dated August 5, 2015, and file stamped Aug 28, 2015.  *Id*.  This motion contains the self-serving statement, "Defendant has timely filed a Motion for Relief from Judgement and Brief in Support seeking to overturn the judgement of conviction and be granted a new trial."  PageID.1633.  In the motion, Rose seeks leave "to file a Motion and Brief in Support exceeding fifty (50) pages (i.e., 62 pages)."  PageID.1634.

Even if the state court received the Rose's motion for relief from judgment before August 25, 2015, this did not toll the statute of limitations because the motion was defective, not accepted for filing, and returned to Rose.  In this regard, the trial court entered an "Opinion and Order Denying Motion to Exceed 50 Page Limit Contained in MCR 6.502(C)," dated August 27, 2015, and filed Aug. 28, 2015.  PageID.1636.

In the opinion and order, the trial judge cited MCR 6.502(C) which provides in pertinent part, "Except as otherwise ordered by the court, the combined length of the motion and any memorandum of law in support may not exceed 50 pages double spaced, exclusive of attachments and exhibits." Opinion and Order (Aug. 27, 2015) at PageID.1636. The trial judge continued,

> Apparently failing to appreciate that the 50 page limitation in MCR 6.502(C) applies to the "combined length of the motion and brief," the Defendant focuses exclusively on the 62 page Brief he seeks to file without acknowledging the additional 11 pages of his accompanying motion for relief from judgment. Thus, the Defendant actually seeks to file a motion and supporting brief exceeding the 50 page combined length and double spacing requirements contained in MCR 6.502(C) by 23 pages - i.e., by nearly 50%."

> No compelling reason exists in the instant case for exceeding the 50 page limit, let alone exceeding the limitation by nearly 50%. The 50 page limitation contained in MCR 6.502(C) no doubt considers and accounts for the fact that motions for relief from judgment, by their nature, address constitutional rights and interests. The limitation therefore strikes the appropriate balance between defendants placing the appropriate amount of material before a court without requiring it to read an inordinate amount of material in order to arrive at a decision. The issues raised in the instant case are not so complex as to alter this balance. Furthermore, it appears that multiple issues the Defendant intends to assert could have been and/ or were actually raised and resolved on appeal. No retroactive change in the law has been asserted, and although the Defendant claims there is "newly discovered evidence," the assertion rests on the in-court video from his preliminary examination - a video in existence long before the Defendant's trial. Also not to be discounted is the fact that the Defendant cannot retry issues simply by couching them under other labels. Finally, although the Defendant relies on the fact he is a layman, he appears quite able to understand and draft a motion for relief from judgment in conformity with the 50 page limitation based on his instant and past submissions.

PageID.1636-1637 (emphasis omitted).

The trial court did not accept the motion for relief from judgment for filing, stating in the order,

> "In light of the foregoing Opinion, the Defendant's Motion to File Motion To Exceed 50 Pages is DENIED, and ACCORDINGLY, the balance of motions

8

accompanying the instant Motion are being returned unfiled in accordance with MCR 6.502(D) (without prejudice or any ruling on their merits)."

PageID.1638.[4]

In his motion for reconsideration, Rose stated that on August 19, 2015, he mailed three copies of the 6.500 motion and the motion to increase page limit to the Oakland County Clerk. PageID.1640.[5]  Both Rose's admission in his motion for reconsideration, as well as the statement in the "undated and unsigned" letter, contradict his representation to this Court that, "Petitioner actually did mail the motion for leave to file a brief exceeding 50 pages on August 5th of 2015" and that "[t]he fact of the matter is that on August 5th of 2015, Petitioner mailed the following six motions to the trial court: 6.500 motion for relief from judgment . . ." Rose's Objection (ECF No. 5, PageID.174).

The trial court denied the motion for reconsideration in an opinion and order entered on September 22, 2015, stating in part, "[t]he new relief requested in the Motion (providing a submission that exceeds the 50 page limitation, but by less) is not properly before the Court. If it were, the request would be denied."  PageID.1646.

Eventually, Rose properly filed a motion for relief from judgment, which the trial court received on December 14, 2015, and filed on December 18, 2015.  PageID.1664.  The trial

---

[4] MCR 6.502(D) ("Return of Insufficient Motion") provides in pertinent part, "If a motion is not submitted on a form approved by the State Court Administrative Office, or does not substantially comply with the requirements of these rules, the court shall either direct that it be returned to the defendant with a statement of the reasons for its return, along with the appropriate form, or adjudicate the motion under the provisions of these rules."

[5] Rose's Motion for reconsideration states in pertinent part:

> 1) That on August 19th of 2015, Defendant mailed 3 copies of 6.500 Motion to the Oakland Co. Clerk.
>
> 2)  That attached to the 6.500 Motion, Defendant attached 3 copies of a Motion to Increase the page limit.

PageID.1640.

judge addressed this motion and other filings in an "Opinion and Order denying defendant's motion for relief from judgment, motion to expand the record, motion for evidentiary hearing, and motion for appointment of counsel", entered on September 22, 2016.  Opinion and Order (Sept. 22, 2016) PageID.1970-1992.  The trial judge set out Rose's issues as follows:

A.      Suppression of favorable material evidence by the prosecutor, contrary to *Brady v Maryland*, and the 5th and 14th Amendments of the US Constitution and art 1 sec 17 of the Michigan Constitution of 1963 based on what the Defendant claims to be Travis' positive identification of someone other than the Defendant after the preliminary examination, Batten's presence in the courtroom at the preliminary examination (and knowledge that the person Travis identified was not the Defendant), and Batten's purportedly false testimony at trial.

B.      Knowing use of perjured testimony, contrary to *Giglio v US*, the 5th and 14th Amendments of the US Constitution and art 1 sec 17 of the Michigan Constitution of 1963 - grounded on the assertion that Batten provided false testimony in regard to identification, the prosecutor was required to correct the record, and the prosecutor must have known Batten's testimony was false.

C.      Deprivation of counsel by virtue of government action, contrary to *US v Cronic*, the 5th, 6th, 8th and 14lh Amendments of the US Constitution and art 1 sec 16, 17 and 20 of the Michigan Constitution of 1963 - again focused on identification, Linda Travis, and Batten.

D.      Deprivation of the right to confront and cross-examine adverse witnesses, contrary to *Davis v Alaska*, the 5th, 6th and 14th Amendments of the US Constitution, and art 1 sec 17 of the Michigan Constitution of 1963 - based on the assertion that the Defendant's right to confront Linda Travis and Batten was violated by the government's suppression of facts.

E.      Deprivation of the right to present a complete defense, contrary to *California v Trombetta*, the 5th, 6th, 8th and 14th Amendments of the US Constitution and art I sec 16, 17 and 20 of the Michigan Constitution of 1963 - grounded on the assertion that Linda Travis positively identified someone other than the Defendant after the preliminary examination, that the purportedly exculpatory identification was provided to Batten, that Batten purportedly provided perjured testimony at trial, the exculpatory identification was deliberately suppressed by the government, and the purported inability to confront witnesses.

F.      Egregious prosecutorial misconduct requiring a new trial under *Donnelly v DeChristoforo* and *Darden v Wainright*, the 5th, 6th and 14th Amendments of the US Constitution, and art I sect 16, 17 and 20 of the Michigan Constitution of 1963 - grounded on (1) Arguments A-E/ false prior identification, (2) assertion that the

10

government improperly shifted the burden of proof on the issue of motive to the
Defendant, knowing the motive presented was false (and thus, requiring the
Defendant to prove that he did not have a motive for committing the arson), (3)
claiming "reverse conspiracy", and (4) misstating the evidence or misleading the
jury in relation to identification, motive, the Defendant's silence when police tried
to interview him, and in closing argument in addressing witness-credibility.

G.    Ineffective assistance of trial counsel under *US v Cronic*, *Strickland v
Washington*, the 5th, 6th and 14th Amendments of the US Constitution, and art I
sect 17 and 20 of the Michigan Constitution of 1963 - grounded on claims that trial
counsel was ineffective in not investigating the "key evidence" the Defendant
emphasizes in his prior arguments (and delineated on page 40), not recalling Linda
Travis to the stand after Batten's testimony, and failing to object to matters about
which the Defendant now complains.

H.    Actual innocence (thereby requiring a new trial) - grounded on identification.

*Id*. at PageID.1974-1975.  In a lengthy opinion (PageID.1970-1992), the trial judge addressed

Rose's arguments and denied his motion for relief from judgment, motion to expand the record,

motion for evidentiary hearing, and motion for appointment of counsel.  *See* Order (Sept. 22, 2016)

(PageID.1992).

While Rose's motion for relief from judgment was pending in the Oakland County

Circuit Court in 2016, he filed an appeal with the Michigan Court of Appeals entitled, "Motion to

appeal trial court's denial of motion to supplement" the motion.  *See People v. Rose*, No. 334800

(Mich. App.) (ECF No. 9-22, PageID.2928) (Sept. 12, 2016).  On December 21, 2016, the appellate

court dismissed the motion stating in pertinent part:

Michael J. Talbot, Chief Judge, acting under MCR 7.201(8)(3), orders:

The delayed application for leave to appeal is DISMISSED for failure to
pursue the case in conformity with the rules. MCR 7.201(B)(3) and 7.216(A)(10).
The Clerk of this Court provided notice regarding the nature of the defects in this
filing, and the defects were not corrected in a timely manner by providing this Court
with five copies of an application conforming to MCR 7.212, five copies of a
statement explaining the delay in accordance with MCR 7.205(G), a proof of
service indicating service on the Oakland County Prosecutor, and a copy of
defendant's prisoner account statement. Dismissal is without prejudice to whatever
other relief may be available consistent with the Court Rules.

11

*Rose*, No. 334800 (Order) (Dec. 21, 2016) (PageID.2927).

After the trial judge denied his motion for relief from judgment on September 22, 2016, Rose filed an application for leave to appeal that order.  *See People v. Rose*, No. 337561 (Mich. App.) (ECF No. 9-23).  The Michigan Court of Appeals denied leave stating:

> The Court orders that the delayed application for leave to appeal is DENIED for lack of merit in the grounds presented.

*Rose*, No. 337561 (Order) (July 7, 2017) (PageID.3210).  The appellate court also denied Rose's motion for reconsideration.  *Id*. (Order) (Aug. 17, 2017) (PageID.3222).

Rose filed an application for leave to appeal the July 7, 2017 order to the Michigan Supreme Court.  *People v. Rose*, No. 156332 (Mich.) (ECF No. 9-24, PageID.3263).  The court denied the application:

> On order of the Court, the motion to supplement application is GRANTED. The application for leave to appeal the July 7, 2017 order of the Court of Appeals is considered, and it is DENIED, because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D). The motion for miscellaneous relief is DENIED.

*Rose*, No. 156322 (Order) (Oct. 2, 2018) (PageID.3408).  The court also denied Rose's motion for reconsideration.  *Id*. (Order) (Feb. 4, 2019) (PageID.3423).

### D.     Rose's habeas petition

On February 22, 2019, Rose filed the present petition seeking federal habeas review pursuant to 28 U.S.C. § 2254.  *See* Petition (ECF No. 1).  Rose has raised 16 issues (in his words):

I.      Confrontation Clause Violation Sixth Amendment; Const. 1963, art 1 § 20.

II.     Self-Incrimination – Right to remain Silent: Fifth Amendment; Const. 1963, art 1 § 17.

III.    Compulsory Clause Violation Sixth Amendment; Const. 1963, art 1 § 13 & 20.

IV.    Ineffective Assistance of Counsel: Sixth & Fourteenth Amendments; Const. 1963, art 1 § 17 & 20.

V.    Prosecutor Misconduct Fourteenth Amendment; Const. 1963, art I & 17.

VI.    Ineffective Assistance of Counsel: Sixth & Fourteenth Amendments; Const. 1963, art I § 17 & 20.

VII.    Prosecutor Misconduct Fourteenth Amendment; Const. 1963, art I § 17.

VIII.    Brady Violation: Fifth & Fourteenth Amendments; Const. 1963, art I § 17.

IX.    Giglio Violation Fifth & Fourteenth Amendments; Const. 1963, art I § 17.

X.    Chronic Violation: Fifth, Sixth, Eighth & Fourteenth Amendments; Const. 1963, art I § 16, 17 & 20.

XI.    Davis Violation Fifth, Sixth & Fourteenth Amendments; Const. 1963, art I § 17 & 20.

XII.    Trombetta Violation Fifth & Fourteenth Amendments; Const. 1963, art I § 17.

XIII.    Prosecutor Misconduct: Fifth, Sixth, Eighth & Fourteenth Amendments; Const. 1963, art I § 16, 17 & 20.

XIV.    Ineffective Assistance of Counsel: Fifth, Sixth & Fourteenth Amendments; Const. 1963, art I § 17 & 20.

XV.    Actual Innocence Eighth & Fourteenth Amendments, Const. 1963, art I § 16 & 17.

XVI.    Cruel & Unusual Punishment and Equal Protection Under Law Violations

Petition at PageID.9-47.

## II.    Statute of Limitations

On initial screening, I recommended dismissing the habeas petition as time barred. *See* Report and Recommendation (R&R) (ECF No. 4).  The Court rejected aspects of the R&R. *See* Order (ECF No. 6).  Having reviewed the entire case file, I conclude that the petition should be dismissed as time-barred.

13

A.       **Initial screening**

Section 28 U.S.C. § 2244(d) provides that:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In most cases, § 2244(d)(1)(A) provides the operative date from which the one-year limitations period is measured. Under that provision, the one-year limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  As discussed, Rose appealed the judgment of conviction to the Michigan Court of Appeals and the Michigan Supreme Court. The Michigan Supreme Court denied his application on January 31, 2014, and denied a motion for reconsideration on May 27, 2014.  Rose did not petition for certiorari to the United States Supreme Court.  However, the one-year limitations period did not commence until the 90-day period in which Rose could have sought review in the United States Supreme Court had expired.  *See Lawrence v. Florida*, 549 U.S. 327, 332-33 (2007); *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000).  Here, the 90-day period expired on Monday, August 25, 2014.

14

Rose had one year from August 25, 2014, to file his habeas application. Rose filed his application on February 7, 2019, about 3½ years after the period of limitations began to run and about 2½ years after his habeas petition was due. Absent tolling, his habeas petition is time-barred.

The statute of limitations for filing a habeas petition is tolled when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see also Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (limiting the tolling provision to only State, and not Federal, processes).

In the previous R&R, I summarized the issue as follows:

Petitioner filed a motion for relief from judgment under subchapter 6.500 of the Michigan Court Rules. Petitioner contends that he mailed his motion on August 5, 2015, when there were 20 days remaining in the statute of limitations. If he is correct, and if the Court assumes that the date he mailed his motion is the date that he filed it, *compare Sueing v. McKee*, No. 1:07- cv-479, 2009 WL 3837741, at *5 (W.D. Mich. Nov. 17, 2009) (holding that the prison mailbox rule does not apply to the filing of a motion for relief from judgment) *with Shaykin v. Romanowski*, No. 14-cv-13399, 2016 WL 193381, at *3-5 (E.D. Mich. Jan. 15, 2016) (holding that the prison mailbox rule does apply to determine the filing date of a motion for relief from judgment), then the statute of limitations was tolled on August 5, 2015, and remained tolled for as long as his motion was "pending" in the state courts. In other words, Petitioner's motion for relief from judgment remained pending until February 4, 2019 [sic]. The trial court denied his motion on September 22, 2016. He appealed that decision to the Michigan Court of Appeals and the Michigan Supreme Court. The Michigan Court of Appeals denied leave to appeal by order entered on July 7, 2017, and denied reconsideration of that order on August 17, 2017. The Michigan Supreme Court denied leave to appeal by order entered on October 2, 2018, and denied reconsideration of that order on February 4, 2019.

Accordingly, if Petitioner did in fact file his motion for relief from judgment in the trial court on August 5, 2015, then the statute of limitations started to run again after February 4, 2019, and expired 20 days later, on February 24, 2019. (Because February 24, 2019 was a Sunday, the deadline for filing the petition would have been February 25, 2019.) Thus, Petitioner's action in this Court would have been timely because the Court received his petition on February 22, 2019.

The state court docket sheet, however, refutes Petitioner's claim that he filed his motion for relief from judgment in August 2015. According to the Register of

Actions in his state court case, he filed a motion for leave to file a brief in excess of 50 pages on August 28, 2015. [citation omitted]  The court denied his motion the same day. *Id*.  He filed a motion for reconsideration on September 21, 2015, and the court denied that motion the following day. He finally filed his motion for relief from judgment almost three months later, on December 18, 2015.  *Id*. In other words, by the time that he filed his motion for relief from judgment, more than three months had passed since the statute of limitations in § 2244(d)(1)(A) had expired.

Even if the Court were to find that the prison mailbox rule should apply to Petitioner's motion for relief from judgment, it should not accept Petitioner's assertion that he mailed his motion for relief from judgment to the state court on August 5, 2015. If that were true, it would have taken more than four months for the motion to reach the state court. Petitioner offers no reason for the Court to believe such an unlikely scenario. It is possible that Petitioner is referring to the motion he filed in August 2015 for leave to file a brief in excess of 50 pages. Petitioner may have attached some form of his motion for relief from judgment to his motion for leave. However, the state court denied the motion for leave. Thus, his motion for relief from judgment was not "pending" in state court as of August 2015.

Because Petitioner filed his motion for relief from judgment after the statute of limitations expired, that motion did not toll the limitations period. A petition for state collateral review does not "revive" the limitations period (*i.e.*, restart the clock); it can only serve to pause a clock that has not yet fully run. *Payton v. Brigano*, 256 F.3d 405, 408 (6th Cir. 2001). Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations. *Id.*; *McClendon v. Sherman*, 329 F.3d 490, 493 (6th Cir. 2003). Even where the postconviction motion raises a claim of ineffective assistance of appellate counsel, the filing of the motion for relief from judgment does not revive the statute of limitations. *See Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004) (*citing McClendon*, 329 F.3d at 490). Accordingly, the statute of limitations expired in August 2015, and Petitioner's habeas corpus petition in this case is over three years too late.

R&R at PageID.167-169.

In rejecting a portion of the R&R, this Court stated that

The Magistrate Judge identified the factual nub of the limitations issue as what exactly Petitioner filed in State Court in August of 2015. The Magistrate Judge correctly recognized that if Petitioner actually filed his motion for relief from judgment on August 5, 2015 in the State Court, as Petitioner contends, then the statute of limitations only "started to run again after February 4, 2019, and expired 20 days later, on February 24, 2019 . . . . Thus, Petitioner's action in this Court would have been timely because the Court received his petition on February 22, 2019." (ECF No. 4, PageID.168).

16

The Magistrate concluded, however, that Petitioner had only filed a motion for leave to file a brief in excess of fifty pages, which the State Court treated as received on August 28, 2015, not August 5. After that motion was denied by the State Court, the Magistrate Judge concluded that Petitioner did not file his actual motion for relief from judgment until almost three months later, on December 18, 2015, after the statute had run. The Magistrate further concluded that even if Petitioner had filed some form of a motion for relief in August 2015 – not just a request for an oversized brief – it was not "pending" since the State Court denied it the day after it was filed.  (ECF No. 4, PageID.168).

In his Objection, Petitioner asserts that he did file a motion for reconsideration along with several other motions (including a motion for excess pages) on August 5, 2018. He maintains the State Court mistakenly construed the filing when it denied it later that month, and that the court was further mistaken when it denied his motion for reconsideration the following month on September 22, 2015. (ECF No. 5, PageID.174). The Magistrate Judge observed, however, that even assuming Petitioner did attach some form of his motion for relief from judgment in his August submissions, "the state court denied the motion for leave. Thus, his motion for relief from judgment was not 'pending' in state court as of August 2015" to further toll the running of the statute of limitations. (ECF No. 4, PageID.169). And so by the time Petitioner filed his motion for relief for judgment on December 18, 2015, the statute had already run.

The difficulty with assessing both the Magistrate Judge's findings and Petitioner's Objections is that, at this point, the federal record does not include the actual State Court filings at issue. What if a fair reading of the actual record documents reveals that Petitioner filed, or tried to file, a request for an oversized brief, and actually filed a version of the brief at the same time on August 5? Maybe that would be enough to toll the limitations period even if the Court later denied a procedural request for an oversized brief without addressing the merits. *Cf. Lexon Ins. Co. v. Naser*, 781 F.3d 335 (6th Cir. 2015) (finding the time for appeal still open because a district court's rejection of a Rule 59 motion for being in an oversized brief did not amount to a disposition of the merits of the motion).

Order (ECF No. 6, PageID.186-187 (footnote omitted).

This Court also noted that the doctrine of equitable tolling may apply:

Moreover, regardless of whether the limitations period actually expired, equitable tolling would be a possibility if the facts are as Petitioner asserts. Equitable tolling should be applied "sparingly." *See, e.g., Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2001); *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010); *Sherwood v. Prelesnik*, 579 F.3d 581, 588 (6th Cir. 2009).  As the Magistrate Judge correctly pointed out, a petitioner seeking equitabletolling of the habeas statute of limitations has the burden of establishing both "(1) that he has

been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Accepting as true all facts in the petition, the Court is not prepared to conclude that in the absence of a look at the actual record "it plainly appears from the face of the petition" that Petitioner is not entitled to equitable tolling. Rule 4, RULES GOVERNING § 2254 CASES; *see also Wolfe v. Johnson*, 564 F.3d 140, 169 (4th Cir. 2009) (discussing the standard of review for habeas petitions). Accordingly, summary dismissal under Rule 4 is inappropriate. If everything Petitioner says is true regarding the State Court process and records, equitable tolling could apply to toll the statute of limitations through December 18, 2015, the date when Petitioner filed the motion for relief from judgment that was ultimately considered (and rejected) by the State Courts. If so, the statute did not begin to run again until February 4, 2019, when the Michigan Supreme Court denied Petitioner's motion for reconsideration. It would have expired 20 days later, on February 24, 2019. By that time, however, Petitioner had filed the instant petition.

The Court emphasizes that this is a very narrow and limited ruling. It is premised on Petitioner ultimately being able to substantiate his factual claims of what happened on the State Court record. If he does, then perhaps the limitations period did not run at all; or if it did, perhaps equitable tolling would apply. The Court believes the best course is to reject a Rule 4 dismissal at this time and obtain the actual State Court record.

Order at PageID.187-188.  The Court ordered respondent to answer, and to "specifically address the question of whether Petitioner's habeas petition is barred by the statute of limitations and whether he is entitled to equitable tolling."  Order (ECF No. 7).[6]

### B.    Rose's habeas petition is barred by the statute of limitations

Rose's habeas petition was due on August 25, 2015.  The question posed to the Court is did Rose properly file a motion for relief from judgment which tolled the statute of limitations?  The undesigned answers "No."

The Supreme Court defined the term "properly filed" in *Artuz v. Bennett*, 531 U.S. 4 (2000), stating in pertinent part:

---

[6] Rose was invited to file a reply to respondent's answer, but he declined.  *See* Order (ECF No. 7, PageID.191) ("Petitioner may submit a reply to the Respondent's answer within 42 days after the answer is filed.").

An application is "filed," as that term is commonly understood, when it is **delivered to, and accepted by, the appropriate court officer for placement into the official record**. *See, e.g., United States v. Lombardo*, 241 U.S. 73, 76, 36 S.Ct. 508, 60 L.Ed. 897 (1916) ("A paper is filed when it is delivered to the proper official and by him received and filed"); Black's Law Dictionary 642 (7th ed.1999) (defining "file" as "[t]o deliver a legal document to the court clerk or record custodian for placement into the official record"). And **an application is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings**. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee. *See, e.g., Habteselassie v. Novak*, 209 F.3d 1208, 1210-1211 (C.A.10 2000); 199 F.3d, at 121 (case below); *Villegas v. Johnson*, 184 F.3d 467, 469-470 (C.A.5 1999); *Lovasz v. Vaughn*, 134 F.3d 146, 148 (C.A.3 1998). In some jurisdictions the filing requirements also include, for example, preconditions imposed on particular abusive filers, *cf. Martin v. District of Columbia Court of Appeals*, 506 U.S. 1, 113 S.Ct. 397, 121 L.Ed.2d 305 (1992) (*per curiam*), or on all filers generally, *cf.* 28 U.S.C. § 2253(c) (1994 ed., Supp. IV) (conditioning the taking of an appeal on the issuance of a "certificate of appealability"). But in common usage, the question whether an application has been "properly filed" is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar.

*Artuz*, 531 U.S. at 8-9 (footnote omitted) (emphasis added).

Upon review of the voluminous state court filings, *see* § I, *supra*, I conclude that Rose did not properly file a motion for relief from judgment before the habeas statute of limitations expired on August 25, 2015. For purposes of this report, I will assume Rose mailed a motion for relief from judgment on or about August 19, 2015. At that time, there were six days remaining in the statute of limitations under § 2244(d)(1)(A). In addition, I will assume that the trial court had possession of this motion before August 25, 2015. The state court record reflects that on August 27, 2015, the trial judge reviewed the proposed motion, denied Rose's attempt to file a motion for relief from judgment contrary to MCR 6.502(C), did not accept the improper motion for filing, and returned the motion to Rose unfiled. In short, Rose did not submit a proper motion for relief from judgment within the habeas statute of limitations, which expired on August 25, 2015. Rose waited another 3½ months – until December 14, 2015 – to submit a proper motion for relief from

judgment which complied with the state court rules. The trial judge addressed the motion for relief

from judgment, as well as other post-judgment motions, in the order entered on September 22,

2016.  Accordingly, for these reasons, Rose's habeas petition is untimely and should be denied as

barred by the statute of limitations.

### C.      Rose is not entitled to equitable tolling

In the original R&R, I concluded that Rose was not entitled to equitable tolling,

stating as follows:

> The one-year limitations period applicable to § 2254 is also subject to
> equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010); *Akrawi v.
> Booker*, 572 F.3d 252, 260 (6th Cir. 2009); *Keenan v. Bagley*, 400 F.3d 417, 420
> (6th Cir. 2005). A petitioner bears the burden of showing that he is entitled to
> equitable tolling. *See Keenan*, 400 F.3d at 420; *Allen v. Yukins*, 366 F.3d 396, 401
> (6th Cir. 2004). The Sixth Circuit repeatedly has cautioned that equitable tolling
> should be applied "sparingly" by this Court. *See, e.g., Hall v. Warden, Lebanon
> Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011); *Robertson v. Simpson*, 624 F.3d 781,
> 784 (6th Cir. 2010); *Sherwood v. Prelesnik*, 579 F.3d 581, 588 (6th Cir. 2009). A
> petitioner seeking equitable tolling of the habeas statute of limitations has the
> burden of establishing two elements: "(1) that he has been pursuing his rights
> diligently, and (2) that some extraordinary circumstance stood in his way."
> *Holland*, 560 U.S. at 649 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005));
> *Lawrence v. Florida*, 549 U.S. 327, 335 (2007); *Hall*, 662 F.3d at 750; *Akrawi*, 572
> F.3d at 260.
>
> Petitioner has failed to raise equitable tolling or allege any facts or
> circumstances that would warrant its application in this case. The fact that Petitioner
> is untrained in the law, was proceeding without a lawyer, or may have been unaware
> of the statute of limitations for a certain period does not warrant tolling. *See Allen*,
> 366 F.3d at 403-04; *see also Craig v. White*, 227 F. App'x 480, 482 (6th Cir. 2007);
> Harvey v. Jones, 179 F. App'x 294, 299-300 (6th Cir. 2006); *Martin v. Hurley*, 150
> F. App'x 513, 516 (6th Cir. 2005); *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir.
> 1999) ("[I]gnorance of the law, even for an incarcerated pro se petitioner, generally
> does not excuse [late] filing."). Accordingly, Petitioner is not entitled to equitable
> tolling of the statute of limitations.

R&R at PageID.169-170.

Nothing in the state court record changes my earlier conclusion with respect to equitable tolling. Accordingly, for the reasons set forth in the original R&R, Rose is not entitled to equitable tolling.[7]

### III.    Certificate of appealability

Even though I have concluded that Rose's habeas petition should be denied, under 28 U.S.C. § 2253(c)(2), the Court must also determine whether a certificate of appealability should be granted.   A certificate should issue if Rose has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).   The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id*.

I have concluded that Rose's application is untimely and, thus, barred by the statute of limitations.   Under *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), when a habeas petition is denied on procedural grounds, a certificate of appealability may issue only "when the prisoner shows, at least (1) that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and (2) that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Both showings must be made to warrant the grant of a certificate.  *Id*.

I find that reasonable jurists could not find it debatable whether Rose's application was timely.  Therefore, I recommend that a certificate of appealability should be denied.

---

[7] While the original R&R found that Rose did not establish "actual innocence" as a basis for avoiding the habeas statute of limitations, the Court's order regarding the timeliness of the habeas petition was limited to whether Rose's habeas petition was barred by the one-year statute of limitation, and if so, whether equitable tolling applied to extend the statute of limitations.

## IV.    Recommendation

For these reasons, I respectfully recommend that the habeas petition be **DENIED**

as untimely.  I further recommend that a certificate of appealability be **DENIED**.


Dated:  February 16, 2022                      /s/ Ray Kent
                                               United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).